RECORD NO. 10-4456

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

OPIO DIARRA MOORE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE HONORABLE ROGER W. TITUS, USDJ, PRESIDING

**REPLY BRIEF OF APPELLANT
OPIO DIARRA MOORE**

Michael E. Lawlor
Gwendolyn R. Waters
LAWLOR & ENGLERT, LLC
6305 Ivy Lane, Suite 608
Greenbelt, Maryland 20770
(301) 474-3404 Telephone
mlawlor@verizon.net
gwaters@lawlor-englert.com

*Counsel for Appellant*                    July 22, 2011

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   LAW ENFORCEMENT ACTED ON A HUNCH AND WITHOUT PROBABLE CAUSE WHEN THEY STOPPED APPELLANT; EVIDENCE FOUND PURSUANT TO THAT STOP SHOULD NOT HAVE BEEN ADMITTED AT TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  APPELLANT'S LIFE SENTENCE THAT WAS BASED SOLELY ON UNRELATED AND NON-RELEVANT FACTS NOT FOUND BY A JURY VIOLATED THE SIXTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . 4

III. APPELLANT'S SENTENCE IS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . 11

   A.   Appellant's Sentence Is Procedurally Unreasonable As the Lower Court Failed to Connect Appellant's Variant Sentence to the Factors Set out in 18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   B.   Appellant's Sentence Is Substantively Unreasonable As the Lower Court Based it On Conduct Unrelated to Conviction That Did Not Meet the Preponderance of the Evidence Standard. . . . . . . . . . . . . . . . . . . . . . 12

IV.  THE LOWER COURT COMMITTED OTHER PROCEDURAL ERRORS THAT DENIED APPELLANT RIGHTS GUARANTEED TO HIM BY THE FIFTH AND SIXTH AMENDMENTS. . . . . . . . . . . . . . . . . . . . . . . . . 21

   A.   The Lower Court Erred in Denying Appellant the Opportunity to Review Subpoenaed Materials Prior to or at Sentencing. . . . . . . . . 21

   B.   The Lower Court Erred in Considering Unreliable Hearsay Testimony at Sentencing and by Admitting Unreliable Evidence in Violation of the Defendant's Due Process Rights. . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**CERTIFICATE OF FILING AND MAILING**. . . . . . . . . . . . . . . . . . . . . . . 32

ii

# TABLE OF CASES, STATUTES, AND AUTHORITIES

## CASE LAW

*Apprendi v. New Jersey*, 530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Blakely v. Washington*, 542 U.S. 296 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Cunningham v. California*, 549 U.S. 270 (2007). . . . . . . . . . . . . . . . . . . . . . . . 10

*Gall v. United States*, 552 U.S. 38 (2007).. . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 20

*Rita v. United States*, 551 U.S. 351 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Booker*, 543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10

*United States v. Cammisano*, 917 F.2d 1057 (8th Cir. 1990). . . . . . . . . . . . . . . 26

*United States v. Davis*, 602 F.Supp.2d 658 (D. Md. March 16, 2009).. . . . . . . . . 16

*United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . 26

*United States v. Gooding*, 695 F.2d 78 (4th Cir. 1982). . . . . . . . . . . . . . . . . . . . . 3

*United States v. Grubbs*, 585 F.3d 793 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Ibarra-Sanchez*, 199 F.3d 753 (5th Cir. 1999). . . . . . . . . . . . . . 3

*United States v. Jones*, 31 F.3d 1304 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . 7, 9

*United States v. Little*, 61 F.3d 450 (6th Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Myers*, 280 F.3d 407 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 10

*United States v. Nixon*, 418 U.S. 683 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Pitt*, 176 F.3d 239 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Powell*, No. 09-4102, 2011 WL 1797893
(4th Cir. May 12, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Raineri*, 670 F.2d 702 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Roberts*, 881 F.2d 95 (4th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Williams*, 10 F.3d 910 (1st Cir. 1993). . . . . . . . . . . . . . . . . . . . . 27

*Wong Sun v. United States*, 371 U.S. 471(1963). . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITY

U.S.S.G. § 6A1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## No. 10-4456

_____

## UNITED STATES OF AMERICA,

### Appellee,

### v.

## OPIO DIARRA MOORE

### Appellant.

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (JUDGE ROGER W. TITUS, PRESIDING)

_____

## APPELLANT'S REPLY BRIEF

_____

## ARGUMENT

I.   LAW ENFORCEMENT ACTED ON A HUNCH AND WITHOUT
     PROBABLE CAUSE WHEN THEY STOPPED APPELLANT; EVIDENCE
     FOUND PURSUANT TO THAT STOP SHOULD NOT HAVE BEEN
     ADMITTED AT TRIAL

Mr. Moore's vehicle was stopped, and subsequently searched without a

1

warrant, and without probable cause to believe that contraband would be found in the vehicle. Although probable cause is not capable of precise definition, officers of the law must present something concrete, beyond a naked belief or hunch that contraband will be found in the vehicle, which was not presented in this case. The lower court found that the officers had probable cause to stop the vehicle based upon Agent McLoughlin's testimony that officers witnessed the exchange of a bag, and that the vehicle Mr. Moore was driving was followed into the District of Columbia. J.A. 65. First, the government concludes that a straw purchase of ammunition occurred at Realco. App. Br. 39.[1] The only purchase that would warrant a later stop would be of contraband–in this case, firearms or ammunition, purchased by someone without lawful authority to make the purchase. However, McLoughlin testified only that the bag seen carried by the supposed straw purchaser had a heavy square object in it, but that the store it was purchased from sold other items with that same weight and shape, and no one confirmed that the item purchased was ammunition. J.A. 43-44, 53. Prior to the search of Mr. Moore's vehicle, at the time of the stop, the officers had only a hunch that the bag contained ammunition. Second, the government contends that based on the supposed straw purchase, the officers had probable cause to believe that

---

[1] "App. Br." denotes the Brief of the Appellee, followed by the appropriate page number.

2

Mr. Moore was in possession of ammunition illegally. App. Br. 39. The government acknowledges that not everyone was prohibited from possessing ammunition in the District of Columbia, *id.*, but ignores the fact that officers did not know the identity of the driver of the vehicle until after the stop. The government suggests that if the officers observed a straw purchase, they had probable cause to believe the driver was a person not permitted to have ammunition in the District of Columbia. *Id.* This of course assumes that the purchase the officers observed was a straw purchase, which as described above, the officers did not know. The known facts at the time were only that an exchange of a black plastic bag was made between two unknown individuals, and one of those individuals drove into D.C.

The government fails to cite a case where an appellate court found probable cause based on information as slight as the information available to officers in this case. In *United States v. Gooding*, 695 F.2d 78, 83 (4th Cir. 1982), this Court found that a suspect fitting the criteria of a drug courier profile, without more, does not rise to reasonable suspicion to conduct an investigatory stop. Here, officers were suspicious of Mr. Moore essentially because he fit a profile of people they thought were likely to purchase firearms illegally. That suspicion, however, did not rise to the probable cause needed to justify the stop of Mr. Moore's vehicle and the ensuing search. In *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758-60 (5th Cir. 1999), the

Fifth Circuit found that despite "a veritable cornucopia of factors suggesting drug-related activity" officers did not have probable cause for a warrantless search until they smelled marijuana when approaching the vehicle. Prior to the stop of Mr. Moore's vehicle, law enforcement had less than a cornucopia of factors to lead them to believe he was committing a crime. And unlike the circumstances in *Ibarra-Sanchez*, law enforcement gained no new information upon approach of Mr. Moore's vehicle, they simply handcuffed him and searched the vehicle.

The facts of this case do not support a finding that officers had the requisite probable cause needed to conduct a warrantless stop and search of Mr. Moore and his vehicle. The warrantless search of the vehicle was unreasonable, and since the ammunition in the vehicle was found pursuant to that unreasonable warrantless search, it should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). The district court erred in finding that the officers had probable cause to stop Mr. Moore, and search his vehicle, and in denying Mr. Moore's Motion to Suppress that evidence.

II.  **APPELLANT'S LIFE SENTENCE THAT WAS BASED SOLELY ON UNRELATED AND NON-RELEVANT FACTS NOT FOUND BY A JURY VIOLATED THE SIXTH AMENDMENT**

"At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without due process of law, and the

4

guarantee that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." *Apprendi v. New Jersey*, 530 U.S. 466, 476-477  (2000) (internal citations omitted).  Like *Apprendi*, this case involves the guaranteed right of a defendant to be tried by a jury.  The Supreme Court held that a sentencing scheme, where a sentence increase depends solely on judicial fact-finding, is unconstitutional. *Id.* at 497.   The Court recognized that "[s]ince *Winship*, we have made clear beyond peradventure that *Winship's* due process and associated jury protections extend, to some degree, to determinations that [go] not to the defendant's guilt or innocence, but simply to the length of his sentence." *Apprendi*, 530 U.S. at 484 (internal quotation omitted).

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court noted, "[t]he Framers would not have thought it too much to demand that, before depriving a man of three years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to the unanimous suffrage of twelve of his equals and neighbors." *Id.* (internal quotation omitted).  The Court continued, "[t]he jury could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the fact the State *actually* seeks to punish." *Id.* at 306-307 (emphasis in original).  The jury found Mr. Moore guilty of being a

felon in possession of ammunition, only to be deprived of every remaining year of his life after the lower court found him "guilty" of other crimes, wholly unrelated to his conviction.

Contrary to what the government argues, *Booker* did not obviate the possibility for constitutional sentencing error, or the need for constitutional analysis of a defendant's sentence. Rather, *Booker* was premised on vindicating those very rights that the Court protected in its holding in *Apprendi*. *See United States v. Booker*, 543 U.S. 220, 238-239 (2005) (internal citations omitted). The Court in no uncertain terms emphasized the need for a "strong connection between the sentence imposed and the offender's real conduct." *Id.* at 246. The Court did not intend to permit the government to convict a defendant of one crime, only to sentence him for other crimes that it could not even charge him with.

The government ignores existing Supreme Court constitutional precedent and instead relies on cases inapposite to Mr. Moore's case. The question presented is not simply whether Mr. Moore's sentence is within the statutory maximum sentence provided by law; but rather was the sentence based on information considered by the lower court in violation of Mr. Moore's constitutional rights. The answer to the latter question is yes.

6

In *United States v. Grubbs*, 585 F.3d 793 (2009), this Court held that uncharged and acquitted conduct may be used by a sentencing court to determine an appropriate sentence. *Id.* at 799. However, in *United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994), this Court defined the *kind* of conduct to which this Court referred as relevant conduct. This Court held "a defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them . . . ." *Id.* Were courts permitted to consider any conduct, whatsoever, there would be no need for the term relevant conduct. The facts of *Grubbs* lend guidance. Grubbs was convicted of numerous counts of knowingly transporting a minor in interstate commerce with intent to engage in sexual activity and related charges. *Grubbs*, 585 F.3d at 796. At sentencing, the district court took into account assaultive activity not specifically covered by the convictions but occurring at the same time, and conduct of the exact nature perpetrated on unnamed victims, which had been specifically investigated and presented in the PSR. *Id.* at 796, 798-99. The district court imposed two upward variances adjusting the guideline range from 151-188 months to 210-262 months, and sentenced Grubbs to a mid-Guidelines sentence of 240 months. *Id.* at 798.

Nothing this Court held in *Grubbs*, or in cases cited within *Grubbs*, suggests that conduct not used to calculate a guidelines range, or conduct that is wholly

7

unrelated to the offense of conviction may be used as the basis for a defendant's sentence.   What occurred during Mr. Moore's sentencing hearing is factually distinguishable, if at all comparable, to the facts in *Grubbs*.  The conduct alleged by the government to have been committed by Mr. Moore was in no way related to his conviction for possession of ammunition, nor was it used by the lower court to compute his guidelines range.  After trial, but before sentencing, the government alleged that Mr. Moore participated in unrelated crimes, and at sentencing the lower court considered the following:

- The court admitted as evidence at sentencing the entire transcript and exhibit book from a completely unrelated trial, *United States v. Davis,* where counsel for Mr. Moore was not present and had no opportunity to cross examine witnesses. J.A. 284.

- The court permitted Inmate One to testify and accuse Mr. Moore of an additional murder and of two attempted murders. J.A. 329-351, and Inmate Two to accuse Mr. Moore of burglaries, in general, J.A. 422.

- The court permitted Sgt. Blazer to: accuse Mr. Moore of another unsolved murder, J.A. 486; state that "burglary tools" were found in Mr. Moore's car, J.A. 484; and reference incidents recorded in Mr. Moore's BOP file, J.A. 498.

These allegations had nothing to do with the crime for which Mr. Moore was convicted–possession of ammunition, was not relevant conduct as defined by U.S.S.G. § 1B1.3, and should not have been permitted or considered at his sentencing.  The government avoids the constitutional issue in its brief, and fails to

demonstrate how the information presented at sentencing is related or relevant to Mr. Moore's offense of conviction.

In stark contrast to the instant case, in *Grubbs*, the district court applied upward variances to effectuate a guideline range that it felt better addressed the defendant's relevant conduct. The sentencing court did not find that Grubbs had committed other crimes separate and apart from his crimes of conviction. The most telling difference between *Grubbs* and the instant case, is that in *Grubbs* the variances the court applied, and the conduct on which the variances were based upon, were detailed in the PSR as part of the recommended guidelines range. In the instant case, the PSR was completely silent as to any of the allegations the government alleged, and on which the lower court based Mr. Moore's sentence.[2]

In *Booker*, the Supreme Court explained that "Congress' basic statutory goal-a system that diminishes sentencing disparity-depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that **underlies the crime of conviction**." *Booker*, 543 U.S. at 250 (emphasis added). The line of cases since *Jones* protect and guard against the infringement of the Sixth Amendment right to a jury trial. *See, e.g.*, *Jones v. United States*, 526 U.S. 227 (1999); *Apprendi v. New*

---

[2] It is also worthy to note that the court in *Grubbs* sentenced the defendant to a guidelines sentence, whereas Mr. Moore was sentence to life imprisonment notwithstanding that his guideline range was 188-235 months.

*Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004)*; United States v. Booker*, 543 U.S. 220 (2005)*; Cunnigham v. California*, 549 U.S. 270 (2007). A sentence of life imprisonment based on uncharged, unindicted, unrelated, non-relevant conduct, violated Mr. Moore's rights guaranteed to him by the Sixth Amendment. A sentence of life imprisonment is unlawful absent the judicial fact-finding undertaken by the lower court. For this reason, analysis of the legality of Mr. Moore's sentence under the framework of the Sixth Amendment is essential to ensure the constitutionality of his sentence. The government avoids the constitutional questions raised, implying that sentencing courts have unfettered discretion in sentencing, beyond appellate review for constitutional defect. Mr. Moore was convicted of possessing ammunition, but sentenced for murders, attempted murders and burglaries. The lower court's reliance on the information presented by the government was unlawful.[3]

---

[3] The government avoids the constitutional issue presented herein, but to the extent it addressed the constitutionality of the sentence, it did so under the incorrect standard of review. Unlike the reasonableness of a sentence, constitutional questions are reviewed by this Court *de novo*. *United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002); *United States v. Pitts*, 176 F.3d 239, 244 (4th Cir. 1999).

III.    APPELLANT'S    SENTENCE    IS    PROCEDURALLY    AND
SUBSTANTIVELY UNREASONABLE

A.    Appellant's Sentence Is Procedurally Unreasonable As the Lower Court
Failed to Connect Appellant's Variant Sentence to the Factors Set out
in 18 U.S. C. § 3553(a)

The government argues that there was no procedural error committed by the

lower court in sentencing Mr. Moore to a life sentence. App. Br. 45.  The government

suggests that since the court "evaluated the § 3553(a) factors, and considered the

appropriateness of the advisory Guidelines range in light of the § 3553(a) factors,"

the sentence is procedurally sound. *Id.*  However, the lower court did not "evaluate"

the factors in any meaningful way nor did it analyze and consider the arguments of

the parties or sufficiently explain the sentence it imposed as required by *Gall v.*

*United States*, 552 U.S. 38 (2007). *Id.* at 49-50 (citing *Rita v. United States*, 551 U.S.

351 (2007)).

While the court noted the existence of the 18 § U.S.C. 3553(a) factors, it did

not meaningfully consider them as required.[4]  The government argues that the court

demonstrated that it analyzed the nature and circumstances and seriousness of the

_____

[4] Initially, the lower court erred in calculating Mr. Moore's guidelines since
it, and not a jury, determined that he was an armed career criminal, pursuant to 18
U.S.C. § 924 (e). J.A. 268.  But for that finding, Mr. Moore's guidelines would
have been 63-78 months, not 188-235 months, and Mr. Moore would not have
been subject to a statutory maximum sentence of life imprisonment.  Mr. Moore's
sentence is procedurally unreasonable for this reason alone.

11

offense by citing to the statutory maximum provided by Congress for possession of ammunition. App. Br. 45-56, J.A. 568. However, citing to the statutory maximum sentence allowable does not in any way take note of the specific nature of Mr. Moore's crime. The court also failed to sufficiently explain the sentence it imposed. The court accepted the testimony, *in globo*, of the inmate witnesses, but failed to make specific findings of fact as to much of the allegations presented, and did not indicate what information it used to come to its conclusions.

Finally, the lower court failed to link its conclusions to its determination that a guideline sentence was insufficient. The court stated only that, "there's very significant indication that this is a dangerous man." J.A. 567. The court stated, with regard to the 3553(a) factors that only a significant jail sentence would suffice, but never explained why a 235 month sentence, the high-end of the guidelines, was not a significant jail sentence. The court did not explain why a life sentence advanced the interests of the 3553(a) factors, but a 235-month sentence would not. Mr. Moore's sentence is impermissible for all the reasons set forth above and below, including that it is procedurally unreasonable.

B. Appellant's Sentence Is Substantively Unreasonable As the Lower Court Based it On Conduct Unrelated to Conviction That Did Not Meet the Preponderance of the Evidence Standard

Reasonableness review, especially in a case such as Mr. Moore's, will overlap

12

with an analysis of Fifth and Sixth Amendment concerns as noted by Justice Scalia in *Rita v. United States*, 551 U.S. 338, 368 (2007) (Scalia, J., concurring).  In that opinion,  Justice Scalia noted that "[t]he Court has reintroduced the constitutional defect that *Booker* purported to eliminate." *Id.* at 369-370.  Justice Scalia further cautioned: "there will inevitably be some constitutional violations under a system of substantive reasonableness review, because there will be some sentences that will be upheld as reasonable only because of the existence of judge-found facts.  *Booker* itself reveals why that reality dooms the construct of reasonableness review . . . ." *Id.* at 374. In *Gall*, Justice Scalia reiterated that "the door therefore remains open for a defendant to demonstrate that his sentence . . . would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury." *Gall*, 552 U.S. at 602-603 (Scalia, J., concurring).

Mr. Moore's life sentence is substantively unreasonable for the same reasons that it is unconstitutional–because it was based on facts found by only the lower court.  In examining the substantive reasonableness of Mr. Moore's sentence, the question is whether a life sentence is reasonable given his guideline range of 188-235 months, and given what the lower court relied upon to support its sentence.  Mr. Moore's sentence was based on factual findings of unrelated and non-relevant conduct that did not meet the preponderance of the evidence standard, and is therefore

13

substantively unreasonable.

First, the government attempts to justify the sentence of life for possession of ammunition in much the same way as did the district court–by referring to the statutory maximum provided for the crime. App. Br. 47. In support of its contention, the government quotes *United States v. Little*, 61 F.3d 450, 454 (6th Cir. 1995), "Congress thus expected that life imprisonment would be appropriate in some cases." App. Br. 47. However, in *Little*, the conduct on which the sentence was based was not in dispute, in fact was admitted to by Little. *Little*, 61 F.3d at 453-54. Little had been previously convicted of rape at gunpoint, and admitted to having a sexual dysfunction for which he was undergoing treatment when the offense of conviction occurred. *Id.* at 453. In the case that led to the appeal, Little was convicted of possession of a firearm by a convicted felon, but that possession occurred during the course of a rape where the defendant forced the victim to have oral sex, and penetrated her digitally, anally and vaginally. *Id.* at 452. It is no surprise that the Court found the life sentence reasonable based upon the circumstances of the offense of conviction.

A comparison between Mr. Moore's case and the facts of *Little* is misplaced. The government analogizes the two cases and suggests that Mr. Moore's alleged straw purchase of ammunition is alarming. App. Br. 48. The facts of *Little* are

14

alarming, the facts surrounding the purchase and possession of ammunition by Mr. Moore are not. Absent facts occurring at the time of the offense of conviction that would warrant a life sentence, the government turns to unrelated conduct, which in some instances occurred more than ten years prior to the offense of conviction, to justify the sentence. The government asserts "[t]he district court found that the defendant was involved in murders–the murder of Jason Schwindler in 2004 and murders for hire in 2007, among others. That conduct, coupled with the defendant's well-documented and violent history while in BOP custody, caused the court to conclude that the defendant's background is 'among the worst [the court has] seen . . . .'" App. Br. 48 (quoting J.A. 570). None of the alleged conduct is in any way related to the offense of conviction. The government also misstates, as did the lower court at times, the evidence presented that supposedly connects Mr. Moore to these allegations.

Even if the district court was not required to use a higher standard of proof than preponderance of the evidence,[5] before accepting the government's allegations that Mr. Moore was involved in two murders, two attempted murders, incidents within BOP and burglaries, it had to be convinced that he more likely than not was involved.

---

[5] Mr. Moore does not concede this to be the correct standard, as was fully addressed in his Opening Brief. Op. Br. 28-34.

15

Based on what the government presented at sentencing, the court could not reasonably find that it is more likely than not that Mr. Moore committed the crimes of which the government accused him.

The lower court stated that it was satisfied Mr. Moore was involved in the murder of Jason Schwindler based on a DNA sample found at the scene, a shopping receipt dated shortly after the murder, a statement supposedly heard by Inmate One that Mr. Moore hoped Davis was not cooperating, a newspaper clip regarding the murder that Mr. Moore sent to a friend, and the fact that Mr. Moore supposedly resembled the second robber. J.A. 563-65. In its brief, the government emphasized the importance of the DNA result. App. Br. 16. Mr. Moore could not be excluded or included as a contributor of the DNA found at the scene. JA 286. Prior to trial in the Davis case, the lower court found that without statistics, mention of that information was not relevant. *United States v. Davis*, 602 F.Supp.2d 658, 679 (D. Md. March 16, 2009). At Mr. Moore's sentencing, however, the same court found him responsible supported by that very DNA evidence. The DNA evidence could implicate numerous other people (how many we cannot know since no statistics were supplied in the report) and does not make it any more likely that Mr. Moore was responsible than any one of a number of people. The shopping receipt found in Mr. Moore's wife's car is not evidence that Mr. Moore was even on the shopping trip,

16

much less that he was involved in a murder.  The government states, as fact, that Mr. Moore accompanied Mr. Davis on a shopping trip to the King of Prussia mall. App. Br. 17.  However, the paid-in-cash receipts do not establish that Mr. Moore was even there, and neither store clerk called in the Davis trial identified Mr. Moore.  Further, even speculative evidence that Mr. Moore shopped with his admitted friend, Mr. Davis, is hardly evidence that he participated in murder.  Finally, the still photograph admitted below that purports to be Mr. Moore is a still surveillance photograph of the back of a person's head. J.A. 519, 748.  The government attempts to bolster the identification of the back of a person's head by stating that the identifying witnesses testified before the grand jury. App. Br. 17.  It is worth noting that the government never furnished the defense with the names of these supposed "acquaintances."  And the reasoning of the witnesses' identification underscores why the identification is nonsensical.  The government notes that the identification was based on the witness' observation that the photograph figure "looked like the defendant, who has a bald head, full beard, and dark skin." App. Br. 17; JA 295, 462-63.[6]  These facts, even in the aggregate, do not suggest that it is more likely than not that Mr. Moore was

---

[6] That "acquaintance" further testified that the figure was also wearing clothing like Mr. Moore would wear– "a big coat and fitted jeans." App. Br. 17; J.A. 295.  The transcript included in the Joint Appendix is as the Appellant received it–redacted.

17

involved in the murder of Jason Schwindler.  The lower court acknowledged as much stating, "the government does not have sufficient evidence to convict this defendant of that crime beyond a reasonable doubt, otherwise, I assume, they would have indicted him and brought him to trial." J.A. 562-63.  The government did not meet even the preponderance of the evidence standard, and a life sentence supported by such scant facts is substantively unreasonable.

As for Mr. Moore's supposed BOP conduct, the government misstates the facts. The government asserts that Mr. Moore was "found guilty" of at least ten infractions involving violence or threats of violence. App. Br. 11.  The government also asserts that the district court relied only on incidents "where a hearing officer had made a factual finding of involvement." App. Br. 59.  However, citations to the record provided by the government indicate that several of those incidents were never even referred to a hearing officer due to lack of evidence.  For instance, the record regarding an incident that reportedly took place on April 24, 1994 shows only that Mr. Moore received an incident report–there is no information or report about what a hearing officer found or the final disposition of the matter. J.A. 654-60.  That incident was referred to by the district court as an incident where Mr. Moore was found to have been involved. JA 567, and the government stated that Mr. Moore was "found guilty" of this offense. App. Br. 12.  The government also cites to an incident

18

on August 16, 1994 as one of the "ten" infractions, App. Br. 11; the record reveals that since there was no identification of Mr. Moore, that no infraction was incurred. J.A. 662-65. Similarly, according to the government, Mr. Moore was found guilty of an incident that occurred on January 14, 1995, App. Br. 11; the record shows that due to a lack of evidence, it was not possible to write an incident report and no disciplinary action was pursued. J.A. 667-72. The government admits that no action was pursued, but states that "officers confirmed [Mr. Moore's] participation. App. Br. 12. However, the report submitted by those officers indicates it was their "belief" that he was involved based on information from unnamed inmates. J.A. 671. Next, the government cites to an incident on August 2, 1997, App. Br. at 11, when the record consists only of an interoffice memorandum that does not indicate whether there was a hearing, or if there was one, what the disposition was. J.A. 713. A final supposed "guilty finding" is gleaned from an incident report that indicates the matter was referred to a hearing officer, but where no hearing documentation was provided and no disposition cited. App. Br. 11; JA 723. Other than the April 1994 incident described above, the lower court only specifically mentioned one other incident that occurred in BOP, while summarily referring to repeated involvements. J.A. 567. The court acknowledged that it took notes from a chart the government presented, which undoubtedly contained references, as does their brief, to incidents where no one,

19

much less Mr. Moore, was disciplined or where no report was even filed.[7]  Relying on this incorrect and mis-characterized evidence to support a life sentence is substantively unreasonable.

Further facts that do not rise to a preponderance of the evidence were relied upon by the district court to support a life sentence in Mr. Moore's case, but are detailed in section IV.B, *infra*.  None of the evidence the district court used to support its imposition of a life sentence meets the preponderance standard.  Simply that the lower court stated "[t]his is a defendant who has been shown by a preponderance of the evidence to be someone who is dangerous . . . ," App. Br. 28; J.A. 571, does not mean the evidence actually met that standard.  Since the evidence did not meet the preponderance standard, the life sentence imposed on Mr. Moore is substantively unreasonable.

---

[7] Much of the deference afforded to district courts in this context rests on the assumption that the "sentencing judge is in a superior position to find facts and judge their import . . . ." *Gall*, 552 U.S. at 51; App. Br. 44.  This deference should not be presumed or afforded when a district court admits that it relied on a chart generated by the government, and when the record reveals that the government misstated, or misrepresented the facts.

IV.    THE LOWER COURT COMMITTED OTHER PROCEDURAL ERRORS
       THAT DENIED APPELLANT RIGHTS GUARANTEED TO HIM BY THE
       FIFTH AND SIXTH AMENDMENTS

    A.    The Lower Court Erred in Denying Appellant the Opportunity to
          Review Subpoenaed Materials Prior to or at Sentencing

Mr. Moore was subjected to a day-long sentencing hearing during which he

was "tried" for several murders, attempted murders, and burglaries, all without any

of the protections a trial would afford him.  One of the witnesses called at the

sentencing hearing was Inmate One, who testified to crimes allegedly participated in

by Mr. Moore.   In return for cooperating against Mr. Moore he hoped to receive a

reduction from his twenty-six year sentence imposed in the United States District

Court for the Eastern District of Virginia. J.A. 368.  Further, Inmate One admittedly

was using heroin daily, and his schizophrenia and bipolar disorder went untreated

during the time frame  when the events he testified about took place. J.A. 408-09.

Finally, Inmate One had been charged with and pleaded guilty in the United States

District Court for the District of Columbia to the very crimes in which he implicated

Mr. Moore, and received a sentence concurrent to his Virginia sentence. J.A. 360.

Upon disclosure of Inmate One's identity, less than two weeks prior to the March

sentencing date, Mr. Moore undertook a reasonable investigation into Inmate One.

This included trying to obtain records from the institutions where Inmate One had

been housed-the District of Columbia Department of Corrections, and the United States Marshal Service,  as well as investigating his past outside of institutional confinement.  No motion to quash was filed for either of the two subpoenas at issue.

The government avoids the first issue presented by Mr. Moore–that no motion to quash was filed, and that the government lacked standing to object to the subpoenas. *See United States v. Raineri*, 670 F.2d 702 (7th Cir. 1982). The U.S. Marshals Service was not in possession of any records to which the government can assert a privilege, nor did the government have a proprietary interest in those documents.  The Marshals are not a local law enforcement agency that had engaged in investigation which formed the basis of the government's allegations against Mr. Moore, and the subpoena was served on the Office of General Counsel for that agency.  Similarly, the subpoena sent to the Custodian of Records for the District of Columbia Department of Corrections was not been challenged by that agency, and the government lacked a proprietary interest in documents requested from that agency. The procedure of sending the materials to the lower court, and/or the government, was not proper.  The government now wishes this Court to review the issue of the subpoenas in a vacuum, without reference to the totality of what occurred at Mr. Moore's sentencing hearing.  As noted above, Mr. Moore was "tried" for crimes unrelated and not relevant to his crime of conviction at his sentencing hearing.  The

22

identity of Inmate One was withheld from Mr. Moore until two weeks before his sentencing hearing. When Mr. Moore attempted to investigate Inmate One's background, he was foreclosed from doing so.

The lower court found the subpoenas improper, pursuant to Fed. R. Crim. P. 17(c), based on the following language added to the subpoena by counsel, "[i]n lieu of appearing in person you may comply with this subpoena duces tecum by furnishing the requested information and/or records by mail by the requested date to the attorney listed on the subpoena." J.A. 813.[8] The lower court found that for Mr. Moore to have access to those materials, prior to sentencing, a court order was required. J.A. 815. Based on that finding the trial court granted a protective order to the extent that the subpoenas requested pre-trial production of documents. JA 817, 842. The district court, while acknowledging the factors set forth in *United States v. Nixon*, 418 U.S. 683 (1974), did not entertain argument as to whether Mr. Moore could meet those standards. The district court also ordered the government to review the materials and disclose to the court and Mr. Moore what it thought may be material. *Id.* While the government did turn over some materials, Mr. Moore was never given the opportunity to review the materials. Even if the subpoenas were improper with regard to

---

[8] The government admitted that the language at issue was not novel, and that the government uses the same language on its trial subpoenas. JA 240-41.

23

requiring pre-trial disclosure, Mr. Moore should have been permitted to examine the materials at sentencing.

Instead of viewing the circumstances of the subpoenas as a whole, the government turns to the naked language of *Nixon*. App. Br. 61. The government asserts that Mr. Moore "received more process than he was due," despite never having been permitted to review the subpoenaed materials. App. Br. 64. Without explanation, the government relies on *Nixon* to support its contention that Mr. Moore should have never been given the opportunity to review the materials, despite that *Nixon* pertains only to pre-trial disclosure. The lower court based the imposition of a life sentence, in large part, on the testimony of Inmate One. As such, the court should have permitted Mr. Moore access to the records he subpoenaed at least at his sentencing hearing. In any event, ordering materials sought via subpoena, disclosed not to Mr. Moore, but to the opposing party, is not proper procedure under *Nixon* or Rule 17(c). Mr. Moore received a life sentence based almost exclusively on a series of crimes he was never charged with. He ought have been afforded the right to adequately investigate and defend himself against the allegations presented by the government. The government asserts that he was afforded "more process than he was due," App. Br. 64, when he was actually denied due process at every turn.

B.    The Lower Court Erred in Considering Unreliable Hearsay Testimony at Sentencing and by Admitting Unreliable Evidence in Violation of the Defendant's Due Process Rights

Even assuming, *arguendo*, that the Confrontation Clause does not apply to a sentencing proceeding–evidence relied upon by a sentencing court is not completely unrestricted, and must still be reliable.[9]  The United States Sentencing Guidelines provide that a sentencing court may only consider reliable hearsay. U.S.S.G. § 6A1.3. As cited by the government, this Court has held that a district court may consider relevant and reliable evidence at sentencing. App. Br. 56; *United States v. Powell*, No. 09-4102, 2011 WL 1797893 at *4 (4th Cir. May 12, 2011).  This Court has additionally found that hearsay statements corroborated by trial testimony are

_____

[9] Mr. Moore contends that the Confrontation Clause should apply at sentencing, especially in this case. The government cites to this Court's recent decision in *United States v. Powell*, No. 09-4102, 2011 WL 1797893 (4th Cir. May 12, 2011), however, the testimony at issue in *Powell* is distinguishable from that in the instant case.  The issue in *Powell* was the recommendation by the writer of the PSR that Powell receive enhancements based on loss totals from information provided to the investigating Postal Inspector and not by witness testimony at sentencing–which Powell claimed violated his right to cross-examine and confront witnesses against him. *Id.* at *1-2.  Again, the information presented at Mr. Moore's sentencing has absolutely nothing to do with his offense of conviction, but rather pertained to unrelated conduct.  For instance, the lower court admitted the entire transcript of an unrelated murder trial, and found that Mr. Moore was involved in that crime. JA 284.  Mr. Moore had no opportunity to cross examine those witnesses.  While this Court has found that the Confrontation Clause does not apply to sentencing proceedings, this Court has not before been presented with a sentencing such as Mr. Moore's that stretches the boundaries of constitutionality further than any other case the undersigned is aware of.

properly relied upon at sentencing. *United States v. Roberts*, 881 F.2d 95, 106 (4th Cir. 1989). However, hearsay statements of questionable reliability that have no corroboration have been found to lack the sufficient indicia of reliability needed to be considered at sentencing. In *United States v. Fennell*, 65 F.3d 812, 813-14 (10th Cir. 1995), hearsay statements lacked sufficient indicia of reliability because they were not made under oath, nor in the presence of the testifying witness, and were not corroborated. Even statements that have been corroborated can be found lacking of sufficient reliability. For instance, in *United States v. Cammisano*, 917 F.2d 1057, 1061-62 (8th Cir. 1990), although the hearsay statements at issue had been corroborated the Court found that because the statements constituted triple hearsay, they lacked the requisite indicia of reliability.

As to the redacted records from BOP, the government urges that Mr. Moore "misses the point," in that evidentiary rules do not apply to sentencing proceedings. App. Br. 57. What the government fails to grasp is that the removal of the names of every person involved except Mr. Moore goes directly to the issue of the reliability of the records. Without knowing who Mr. Moore's accusers are, much less who allegedly participated in the incidents, an analysis of the reliability of those records is futile. Additionally, as discussed above, the government has misstated what little facts have not been redacted from those records. The government adds that Mr.

26

Moore did not offer any evidence to refute the information in the BOP records.  App. Br. 59.  Mr. Moore could not possible refute the information since his accusers were not named and the BOP records received were repeatedly marked "F.O.I. Exempt." J.A. 654-740.  The government next attempts to bolster the reliability of the BOP records citing that business records are an exception to the hearsay rule. App. Br. at 58.  This argument is misplaced.  The only persons who have an interest in ensuring the accuracy of the reports, the rationale for the exception cited by the government, *id.*, are BOP officials.  The double hearsay statements of inmates later recorded by the BOP officials do not fall under the exception.  Further, the double hearsay in the reports came from inmates who do not have the interest in ensuring the accuracy of records kept by BOP.

Similarly, the government urges that the redacted grand jury testimony identifying the back of some person's head, is sufficiently reliable.  The identity of those witnesses were never disclosed to Mr. Moore.  The government cites to *United States v. Williams*, 10 F.3d 910 (1st Cir. 1993) for the proposition that grand jury transcripts are reliable. App. Br. 58.  However, in *Williams*, the name of the grand jury witness was known to the defendant, and the grand jury testimony led to his indictment for the crime for which he was being sentenced. *Williams*, 10 F.3d at 914. In the instant case, the grand jury witnesses were never identified, and were called in

27

reference to a case completely unrelated to Mr. Moore's conviction, for which charges were never brought. Mr. Moore could not even begin to rebut the testimony absent knowing who the witnesses were. The testimony of unnamed grand jury witnesses, testifying about allegations unrelated to the crime of conviction, is not sufficiently reliable for a court to consider at sentencing.

With regard to the murder of Carlos Webb, the government simply asserts that hearsay statements, which did not even purport to identify Mr. Moore, were reliable because they were corroborated. App. Br. 58. The supposed corroboration being telephone records (that only indicate that Mr. Moore called Mr. Webb–inconsequential since Sgt. Blazer admitted the two knew each other, J.A. 492), and a recorded phone conversation where Mr. Moore indicated that he was irritated with an unnamed person (a conversation that Sgt. Blazer testified was "in code." J.A. 489). *Id.*[10]

The court should not have admitted or considered any of the evidence detailed

---

[10] The government does not address the reliability of the testimony of Inmate One or Inmate Two. Reliability issues regarding Inmate One's motive to give false testimony, inability to provided details or even dates of occurrence for incidents he testified about, his persistent drug use, and untreated schizophrenia, are detailed in Mr. Moore's Opening Brief, Op. Br. 10-11, and in section IV.A, *supra*. The testimony of Inmate Two was similarly unreliable as it was given in hopes of securing a lesser sentence. Op. Br. 11. Further, the burglary that Inmate Two asserted Mr. Moore committed was not investigated by Sgt. Blazer, nor did he establish or confirm that a similar burglary had even occurred.

28

above.  It was unreliable, and its consideration by the court violated Mr. Moore's Fifth Amendment right to due process.  The court's reliance on this unreliable evidence, particularly given the severe sentence imposed, violated Mr. Moore's due process rights.

## CONCLUSION

The government asks this Court to sanction a sentence based solely on conduct wholly unrelated to the offense of conviction.  Further, it asks this Court to do so without examining the numerous constitutional issues presented.  No sentence is beyond review for constitutional infirmity, that the guidelines are now advisory is of no moment to the constitutional inquiries that must remain available for analysis.  For the forgoing reasons, and those presented in the Opening Brief of Appellant, Mr. Moore respectfully requests that this Court reverse his convictions and sentence, and remand his case to the district court for disposition consistent with this Court's opinion.

Respectfully submitted,


_/s/_____

MICHAEL E. LAWLOR
GWENDOLYN RUTH WATERS
Lawlor & Englert, LLC
6305 Ivy Lane, Suite 608
Greenbelt, Maryland 20770
(301) 474-3404

## CERTIFICATE OF COMPLIANCE

This reply brief has been prepared in 14-point Times New Roman font. Exclusive of the cover page, table of contents, table of authorities, certificate of compliance, and certificate of filing and mailing, this brief contains 6969 words.

___/s/_____
Michael E. Lawlor

## CERTIFICATE OF FILING AND MAILING

I hereby certify that on this 22nd day of July, 2011, I filed with the Clerk's Office

of the United States Court of Appeals for the Fourth Circuit the required copies of the

foregoing Reply Brief of Appellant, and further certify that  I served the required

copies via first class mail this same date from Richmond, Virginia, to counsel listed

below.

The necessary filing and service was performed in accordance with the

instructions given me by counsel in this case.


_____/s/_____

May Serafim
Lantagne Legal Printing, Inc.
801 East Main Street, Suite 100
Post Office Box 2472
Richmond, Virginia 23219-2472
(804) 644-0477


OPPOSING COUNSEL SERVED

Deborah Johnston, Esquire
Emily Glatfelter, Esquire
Office of the United States Attorney
6500 Cherrywood Lane
Greenbelt, MD 20770