## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| **v.** | * | **Case No: 10-4456** |
| | * | |
| **OPIO D. MOORE** | * | |

### PETITION FOR REHEARING AND REHEARING EN BANC

**COMES NOW** Appellant Opio Moore, by and through his attorneys, Michael E. Lawlor, and Gwendolyn R. Waters, Lawlor & Englert, LLC, and respectfully requests that this Court grant Rehearing and Rehearing En Banc of Mr. Moore's case pursuant to Federal Rules of Appellate Procedure 35 and 40. In support of this Petition, Mr. Moore states the following.

### STATEMENT OF PURPOSE

On June 27, 2012, a unanimous panel of this Court affirmed Mr. Moore's conviction and sentence in an unpublished opinion. On appeal to this Court, Mr. Moore argued a number issues including: (1) whether sentencing Mr. Moore to the statutory maximum of life imprisonment based on allegations of conducted unrelated to the crime of conviction violated the Fifth and Sixth Amendments; and (2) whether the sentence, based on allegations not proven even by a preponderance of the evidence, was substantively unreasonable.

1

Mr. Moore was found guilty of a violation of 18 U.S.C. § 922(g)(1), and conspiracy to commit the same offense. At sentencing, the government sought a life sentence based on accusations that Mr. Moore was involved in several criminal acts that had no bearing on the offense of conviction including unrelated murders, attempted murders and other criminal activity. The lower court permitted the government to present these allegations at sentencing by way of its review of the transcript and exhibits of another individual's trial (at which Mr. Moore was not present) and through testimony of cooperating witnesses.

In a long line of cases from *Jones v. United States*, 526 U.S. 227 (1999) to *Cunnigham v. California*, 549 U.S. 270 (2007), the Supreme Court has consistently made clear that the right to a jury is not obviated by modern sentencing practice, noting that, "[t]he jury could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the fact the State *actually* seeks to punish." *Blakely v. Washington*, 542 U.S. 296, 306-07 (2004) (emphasis in original). In imposing a life sentence based on the presentation of the government, the lower court violated Mr. Moore's Fifth and Sixth Amendment rights.

The unpublished decision in Mr. Moore's case dismissed the constitutional

aspects of the argument presented as to the sentencing claims by relying on Circuit

precedent that is dissimilar from the instant case.   In disposing of Mr. Moore's Fifth

and Sixth Amendment challenges, this Court stated that,

> Defendant's remaining constitutional arguments concerning his sentence
> have previously been considered and rejected by this Court. *See, e.g.*
> *United States v. Grubbs*, 585 F.3d 793, 798-803 (4th Cir. 2009)
> (consistent with the Fifth and Sixth Amendments, a district court may
> consider uncharged conduct in determining a sentence, so long as that
> conduct is proven by the preponderance of the evidence).

Unpublished Opinion at p. 18.  *Grubbs* is significantly distinguishable from Mr.

Moore's case and does not provide the framework for deciding the constitutional

issues presented by Mr. Moore.  It is also not a license for a sentencing court to

ignore a defendant's Sixth Amendment rights.  Further, since oral argument was

heard in this case, Mr. Moore was tried by a jury in the United States District Court

for the District of Columbia and found to be not guilty of many of the same unrelated

allegations that the lower court relied on in sentencing Mr. Moore to life

imprisonment. In this Petition, Mr. Moore seeks rehearing and rehearing en banc as

to the sentencing claims noted above.  The panel decision is in conflict with Supreme

Court precedent and the issues presented are of exceptional importance as detailed

below.  *See* Rule 35(b)(1)(A) and (B).

## PROCEDURAL AND FACTUAL HISTORY

On April 28, 2008, a grand jury in the District of Maryland returned an indictment charging Opio Moore (hereafter the Appellant or Mr. Moore) with being a felon in possession of ammunition, pursuant to 18 U.S.C. § 922(g)(1), and conspiring to be a felon in possession of ammunition, pursuant to 18 § U.S.C. 371.

On December 5, 2008, after a four-day trial before United States District Judge Roger W. Titus and a sitting jury, Mr. Moore was found guilty of both counts. On April 22, 2010, the district court sentenced Mr. Moore to life in prison for count one, and to sixty months' imprisonment for count two, to be served concurrently to the sentence imposed for count one. On June 27, 2012, in an unpublished opinion, this Court affirmed Mr. Moore's conviction and sentence. Mr. Moore was tried in the United States District Court for the District of Columbia, before the Honorable John D. Bates and a sitting jury, for a murder and two attempted murders that were presented to the Maryland sentencing court.[1] On July 5, 2012, Mr. Moore was acquitted of all charges.

Mr. Moore's sentencing hearing can only be described as a star chamber-like grouping of mini-trials. The court admitted as evidence at sentencing the entire transcript and exhibit book from a completely unrelated trial, *United States v. Davis,*

---

[1] *United States v. Opio Moore,* 10-171-3-JDB.

4

where counsel for Mr. Moore was not present and had no opportunity to cross examine witnesses. J.A. 284. Additionally, the court permitted a cooperating witness to testify and accuse Mr. Moore of an additional unrelated murder and of two unrelated attempted murders. J.A. 329-351, and another cooperating witness to accuse Mr. Moore of unrelated burglaries. J.A. 422. Finally, the court permitted Sgt. Blazer to reference incidents, as proven, recorded in Mr. Moore's BOP file. J.A. 498. The district court based the imposition of a life sentence on the unrelated allegations, finding: that Mr. Moore was involved in the murder of Jason Schwindler (relying on a transcript from Mr. Davis' case), J.A. 563; that he was involved in the murder and attempted murders alleged by a cooperating witness, J.A. 565 (exactly the opposite of what a jury of his peers found); and that he was involved in non-specific burglaries alleged by the other cooperating witness. J.A. 560.

## REASONS FOR GRANTING THE PETITION

A.   The Panel's Decision that Appellant's Fifth and Sixth Amendment Rights Were Not Violated By a Sentence Based Solely on Uncharged, Unrelated Facts Not Found by a Jury Beyond a Reasonable Doubt is in Conflict with Supreme Court Precedent

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court explained, "[a]t stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without due process of law, and the

5

guarantee that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." *Id.* at 476-477 (internal citations omitted). The Court held that a sentencing scheme, where a sentence increase depends solely on judicial fact-finding, is unconstitutional. *Id.* at 497. The Court recognized that "[s]ince *Winship*, we have made clear beyond peradventure that *Winship's* due process and associated jury protections extend, to some degree, to determinations that [go] not to the defendant's guilt or innocence, but simply to the length of his sentence." *Apprendi*, 530 U.S. at 484 (internal quotation omitted).

Since *Apprendi*, the Court has had cause to revisit this issue. In *Blakely v. Washington*, the Court held that the defendant's increased sentence based on a judicial finding that the crime was committed with deliberate cruelty was unconstitutional. 542 U.S. at 313. In so holding, the Court noted, "[t]he Framers would not have thought it too much to demand that, before depriving a man of three years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to the unanimous suffrage of twelve of his equals and neighbors." *Id.* (internal quotation omitted). The Court explained the alternative: "a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit [the murder] . . . ." *Id.* at 306. In finding this to be an "absurd result" the Court continued, "[t]he jury could not function as

6

circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the fact the State *actually* seeks to punish." *Id.* at 306-307 (emphasis in original).

Not long after *Blakely*, sentencing in federal court was substantially altered in *United States v. Booker*, 543 U.S. 220 (2005). In holding the United States Sentencing Guidelines to be advisory only, the Court recognized the "principles [they] sought to vindicate" in *Apprendi*, and reiterated that "[t]he Framers of the Constitution understood the threat of judicial despotism that could arise from arbitrary punishments upon arbitrary convictions without the benefit of a jury in criminal cases." *Id.* at 238-239 (internal citations omitted). With reference to information about a defendant presented at sentencing, the Court went on to clarify that, "the defendant is punished only for the fact that the present offense was carried out in a manner that warrants increased punishment . . . ." *Id.* at 240 (internal citations omitted).

In *Cunnigham v. California*, the Court had occasion to clarify *Booker* as it examined California's determinate sentencing system. Holding that the California system was at odds with *Apprendi*, and thus unconstitutional, the Supreme Court reiterated that a sentencing court's broad discretion "does not shield a sentencing

system from the force of our decisions." *Cunningham*, 549 U.S. at 290.  Further, the Court explained that "[t]he reasonableness requirement Booker anticipated for the federal system operates within the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints . . . .  Booker's remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless." *Id.* at 292-293.

Mr. Moore's sentence violates the Sixth Amendment. The district court supported a variant sentence using facts that were never put before the jury, were wholly unrelated to the conviction, were uncharged and not admitted to by Mr. Moore, and were not used in computing his criminal history.  Analysis of the legality of Mr. Moore's sentence under the framework of the Sixth Amendment is necessary in addition to the reasonableness inquiry.

As detailed above, the court admitted the entire transcript and exhibit book from a completely unrelated trial; permitted a cooperating witness to testify and accuse Mr. Moore of an additional unrelated murder and of two unrelated attempted murders; and permitted another cooperating witness to accuse Mr. Moore of unrelated burglaries.  The court also permitted Sgt. Blazer to reference incidents, as proven fact, from Mr. Moore's BOP history. None of these allegations were legally or factually related to the crime for which Mr. Moore was convicted, nor were they admitted to

8

by Mr. Moore, nor used to compute his guideline range.   At the time of his sentencing, Mr. Moore had not been charged with any of these crimes, much less been in front of a jury.  Since his sentencing hearing in Maryland, Mr. Moore has been tried for the murder of Franklin Moyler, the attempted murder of Melvin Terrell, and the attempted murder of Michael Majors.  These allegations were presented at the Maryland sentencing, and at the recent trial through the same cooperating witness. On July 5, 2012, Mr. Moore was acquitted of all charges.

Mr. Moore's sentence is the "absurd result" the Supreme Court cautioned against in *Blakely*, yet this Court found there to be no Fifth or Sixth Amendment violation based upon the ruling in *United States v. Grubbs*.  The panel reads  *Grubbs* too broadly.   While uncharged or acquitted conduct may, in certain circumstances, be fair consideration at a sentencing proceeding, it is not so when that uncharged (and now acquitted) conduct is completely unrelated to the offense of conviction, when it is not admitted to by the defendant, or tied in some way to the calculation of criminal history.   To read *Grubbs* as broadly as the panel did in this case is to ignore the entire string of holdings by the Supreme Court from *Jones* to *Cunningham.*  Mr. Moore was convicted of possessing ammunition, but sentenced for murders, attempted murders and burglaries.  The Court in *Booker* reminded us of the "threat of judicial despotism" that can arise with arbitrary punishment. *Booker*, 543 U.S. at 238-239 (internal

9

citation omitted). That threat became reality when the district court punished Mr. Moore, under the guise of an unrelated conviction, for murders and attempted murders. The government had so little evidence against Mr. Moore for the murder of Mr. Schwindler that they could not even indict him. When Mr. Moore was tried for the allegations testified to by a cooperating witness, he was acquitted of all charges. The sentence imposed by the court, which was based on untested allegations of the government, violated Mr. Moore's jury trial right.

In addition to violating Mr. Moore's Sixth Amendment rights, his sentence violated Moore's Fifth Amendment rights, as the government was not held to the reasonable doubt standard. "A person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt." *Herrera v. Collins*, 506 U.S. 390, 398 (1993). In affirming Mr. Moore's sentence, a panel of this Court chiefly relied on *Grubbs*, noting "[d]efendant's remaining constitutional arguments concerning his sentence have previously been considered and rejected by this Court." Unpublished Opinion at p. 18. In *Grubbs*, this Court held that uncharged and acquitted conduct may be used by a sentencing court to determine an appropriate sentence. *Grubbs*, 585 F.3d at 799. However, were courts permitted to consider any conduct, whatsoever, there would be no need for the guideline pertaining to relevant conduct. The facts of *Grubbs* lend

10

guidance. Grubbs was convicted of numerous counts of knowingly transporting a minor in interstate commerce with intent to engage in sexual activity and related charges. *Grubbs*, 585 F.3d at 796. At sentencing, the district court took into account assaultive activity not specifically covered by the convictions but occurring at the same time, and conduct of the exact nature perpetrated on unnamed victims, which had been specifically investigated and presented in the PSR. *Id.* at 796, 798-99. The district court imposed two upward adjustments that served to increase the guideline range from 151-188 months to 210-262 months, and sentenced Grubbs to a mid-Guidelines sentence of 240 months. *Id.* at 798.

Nothing this Court held in *Grubbs*, or in cases cited within *Grubbs*, suggests that conduct not used to calculate a guidelines range, or conduct wholly unrelated to the offense of conviction, may be used as the basis for a defendant's sentence. What occurred during Mr. Moore's sentencing hearing is factually distinguishable, if at all comparable, to the facts in *Grubbs*. The conduct alleged by the government to have been committed by Mr. Moore was in no way related to his conviction for possession of ammunition, nor was it used by the lower court to compute his guidelines range.

This is the case where addressing the relationship between due process and *Booker* reasonableness is unavoidable. The Fifth Amendment can be violated by merely considering impermissible information, but also by failing to subject the

government to a heightened standard of proof. The information presented at sentencing to implicate Mr. Moore in the unrelated crimes the government alleged he committed was anemic. So much so that with regard to the Schwindler murder, the district court itself recognized that, "the government does not have sufficient evidence to convict defendant of that crime, or they would have done so." J.A. 562. As stated, a jury has acquitted Mr. Moore of all the acts he was accused of by the first cooperating witness, and there have been no charges against Mr. Moore for any of the other allegations presented at sentencing. The district court simply found that the cooperating witnesses were reliable and credible, and that Sgt. Blazer corroborated their testimony. Given the severity of the crimes Mr. Moore was accused of at sentencing, and the fallibility of the witnesses against him, due process demanded that a heightened standard of proof be used by the court in making its factual findings. If there is any case that demonstrates that due process must remain viable at sentencing, aside from *Booker* reasonableness, it is this case. This is not the due process that the Framers of the Constitution envisioned, rather this is precisely the judicial despotism and governmental power that they sought to prevent.

C.    The Panel's Decision that Appellant's Sentence Based On Conduct Unrelated to Conviction That Did Not Meet the     Preponderance of the Evidence Standard Was Substantively Reasonable Is in Conflict with Supreme Court Precedent

Mr. Moore's life sentence is substantively unreasonable for the same reasons

12

that it is unconstitutional– because it was based on facts found by only the court.   In

*Rita v. United States*, 551 U.S. 338 (2007), Justice Scalia filed a separate opinion

wherein he explained why the reasonableness review, in a case such as  Mr. Moore's,

will overlap with an analysis of Fifth and Sixth Amendment concerns. *Id.* at 368

(Scalia, J., concurring).  In that opinion,  Justice Scalia noted that post-*Rita*, "some

sentences reversed as excessive will be legally authorized in later cases only because

additional judge-found facts are present . . . reintroduc[ing] the constitutional defect

that Booker purported to eliminate." *Id.* at 369-370.  In *Gall v. United States*, 552

U.S. 38 (2007), Justice Scalia reiterated that "the door therefore remains open for a

defendant to demonstrate that his sentence .  .  . would not have been upheld but for

the existence of a fact found by the sentencing judge and not by the jury." *Id.* at 602-

603 (Scalia, J., concurring).

　　　　Even if the district court was not required to use a higher standard of proof than

preponderance, before accepting the government's allegations that Mr. Moore was

involved in unrelated murders, attempted murders and burglaries, it had to be

convinced that he more likely than not was involved.  Based on what the government

presented at sentencing, the court could not reasonably find that it is more likely than

not that Mr. Moore committed the crimes of which the government accused him.

Therefore, the life sentence the court imposed based on its findings of facts is

substantively unreasonable. As previously noted, the only specific findings of fact that the court made were with regard to the murder of Jason Schwindler. The court stated that it was satisfied that Mr. Moore was involved in the murder of Jason Schwindler based on a DNA sample found at the scene, a shopping receipt dated shortly after the murder, a statement supposedly heard by a cooperating witness that Mr. Moore hoped Davis was not cooperating, a newspaper clip regarding the murder that Mr. Moore sent to a friend, and the fact that Mr. Moore generally resembled the second robber. J.A. 563-65. Pertaining to the DNA, Mr. Moore could not be excluded *or* included as a contributor of the DNA found at the scene. At Mr. Moore's sentencing, however, the court found him responsible supported by DNA evidence. The shopping receipt found in Mr. Moore's wife's car is not evidence that Mr. Moore was on the shopping trip, much less that he was involved in a murder. There was no testimony or evidence regarding the context of Mr. Moore's supposed statement about Mr. Davis, or any evidence clarifying the circumstances or context of the newspaper clipping. Finally, Sgt. Blazer investigated the murder, and admitted that the photograph of the robber (purportedly Mr. Moore) depicted only the back of a person's head. J.A. 519, 748. The facts, even in the aggregate, do not suggest that it is more likely than not that Mr. Moore was involved in the murder of Jason Schwindler.

As for Mr. Moore's conduct while incarcerated, the district court mentioned two specific incidents, yet only by month and year for one, and year for the other. J.A. 567. The court then described "repeated[]" involvement in incidents from 1997-2001. *Id.* The court failed to refer to the BOP incidents with specificity, much less find that Mr. Moore was responsible for these incidents, or that the information supplied by the government was reliable or corroborated. The records were heavily redacted, including the redaction of the names of victims and other parties involved. Sgt. Blazer was permitted to testify as to the incidents included in the BOP records without first hand knowledge. The government did not meet even the preponderance of the evidence standard, and a life sentence supported by such scant facts is substantively unreasonable, in addition to being unconstitutional.

## CONCLUSION

For the reasons stated therein, Mr. Moore respectfully requests that this Court grant this petition for Rehearing and Rehearing En Banc, vacate the panel opinion as to these issues, and vacate the life sentence imposed by the District Court.

15

Respectfully submitted,


_____/s/_____
Michael E. Lawlor
Gwendolyn R. Waters
Lawlor & Englert, LLC
6305 Ivy Lane, Suite 608
Greenbelt, Maryland 20770
(301) 474-3404

## CERTIFICATE OF SERVICE

I hereby certify that on this day, June 11, 2012, a copy of the foregoing was served on counsel for the government, via electronic filing.

_____/s/_____
Michael E. Lawlor